JAMES A. CONKEY and MARY CONKEY, his wife, Plaintiffs Below, Appellants,

*vs.*

PAUL L. THOMPSON and THELMA THOMPSON, his wife, Defendants Below, Appellees.

*Supreme Court of Delaware, December 28, 1955.*

*Thomas Herlihy, Jr.,* Wilmington (*Morris Cohen,* Wilmington, with him on the brief), for appellants.

*Nathan P. Michlin,* Wilmington (*Robert H. Wahl,* Wilmington, with him on the brief), for appellees.

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, JJ., sitting.

SOUTHERLAND, Chief Justice: On June 21, 1952, the plaintiffs below (the Conkeys) entered into a contract with the defendants below (the Thompsons) for the purchase by the Thompsons of certain real estate in New Castle County owned by the Conkeys. Its provisions may be summarized as follows:

The price is fixed at $1,700.60. Upon the signing of the contract the Thompsons are to pay $200 on account and the Conkeys are thereupon to execute and deliver to the Thompsons a quit-claim deed for the property. The provisions for the payment of the balance of the price are unusual and are somewhat confusing. There was a judgment lien against the land for delinquent county taxes. Paragraph 1, sub-paragraph (a), of the agreement provides:

> "The purchasers shall bid upon the said property at a sale for Delinquent County Taxes of the County of New Castle which sale is contemplated to be held at some date after the date of the signing of this agreement. In the event the purchasers shall successfully bid in the said property at the said sale for a price which is less than the said sum of Fifteen Hundred and Sixty One-Hundredths Dollars ($1500.60), being the balance due on the agreed purchase price as aforesaid, then the purchasers shall pay over to the sellers the difference between the amount of the purchasers' bid which may be accepted at the said sale, if such bid is accepted, and the said sum of Fifteen Hundred and Sixty One-Hundredths Dollars ($1500.60). The said payment shall be made by the purchasers to the sellers upon the day on which any proceeds of the said sale which are due and payable to the said sellers after the costs thereof, together with all other usual amounts of monies are deducted from, are paid over by the Sheriff of New Castle County, Delaware, to the sellers, following the confirmation of the said sale to the purchasers by the Superior Court of the State of Delaware in and for New Castle County."

There is no provision fixing the date for payment of the purchase price in the event the sale was not held.

The contract further provided that if the purchasers should not be the successful bidders at the sale, the payment of $200 was to be refunded. Another provision, dealing with the possibility of claims of other persons against the proceeds of sale, required the sellers to hold the purchasers free of any liability in respect of such claims. Still another provision dealt with the possibility of a third person redeeming the land from the sale, in which event the $200 was to be refunded to the purchasers.

The Thompsons paid the $200, and the Conkeys executed and delivered a deed to the property. The land was thereafter advertised to be sold at public sale on December 19, 1952. The day before the date of the sale (December 18) the Thompsons recorded their deed, caused the sale to be stayed, and paid off the judgment lien. In September 1953, the Conkeys tendered to the Thompsons the $200 paid on account and demand a reconveyance of the property. The Thompsons refused and in turn tendered to the Conkeys the balance due on the purchase price. The Conkeys refused it. (The lapse of time between the sale and further proceedings is unexplained.) The Conkeys then brought suit in the Court of Chancery, praying for a cancellation of their deed to the Thompsons, or (apparently in the alternative) a decree that the Thompsons reconvey the land to them.

The theory of the complaint was that the Thompsons by staying the sale had breached the contract, and that the breach in some way entitled the Conkeys to rescind the transaction.

The Vice Chancellor granted the Thompsons' motion to dismiss. He held that the provisions of the agreement relating to the "contemplated" tax sale were for the benefit of the Thompsons. He observed that the quit-claim deed contained no warranty, and that the sale would have tended to clear and confirm Thompsons' existing title.

We are in accord with the Vice Chancellor's decision. The transaction was, in effect, an outright sale of the property to the Thompsons, with provisions enabling them to confirm their title

through the mechanics of a tax sale, under conditions that (1) would assure to the Conkeys the receipt of the full purchase price, and (2) would protect the Thompsons against a failure to obtain confirmation of the title by the sale. The contemplated sale, therefore, was for their benefit alone. The only interest the Conkeys retained was the right to receive the balance of the purchase price less the amount of the judgment.

Against this conclusion the Conkeys advance two arguments.

First, it is said that the failure of the contract to specify a settlement date indicates that a public sale must be had. If the intention of the contract was to give the Thompsons the right to dispense with the sale, a settlement date, it is argued, would have been fixed; whereas, the only reference to settlement by the purchasers is the provision, quoted above, relating to the payment of the difference between the successful bid and the purchase price. Parenthetically, we note that this provision conflicts with the provisions of paragraph 1(f), which require the Thompsons to bid a minimum of $1,500.60. The provision relied on to show a "settlement date" is therefore superfluous.

As to the sale, it is apparent that the parties "contemplated" that it would be had, but there was no agreement that it *must* be had. What difference did it make to the Conkeys if the sale was dispensed with? The simple answer to this contention is that upon the execution and delivery of the deed the Conkeys had divested themselves of all interest in the property. The contract specified the purchase price and provided for a conveyance for that consideration. True, the sale was defeasible in certain circumstances, but only at the option of the Thompsons.

It is said that the contract did not contemplate a nine months' delay, after the sale was stayed, in paying the balance. Certainly, it was the duty of the Thompsons to make payment within a reasonable time; but there is no suggestion in the record that the Conkeys demanded payment. Nor does it appear that any contention was made in the court below that the Thompsons had defaulted in making payment.

Second, it is said that the Conkeys did retain an interest in the property, because if the property brought at sale more than the minimum price of $1,500.60, they would have received the benefit of the higher bid.

Once again the execution and delivery of the deed is wholly inconsistent with any such contention. After the title passed, the grantee would be entitled to the proceed's of sale. 21 *Am.Jur., Executions,* § 346; 33 *C.J.S., Executions,* § 251; *Bitting's Appeal,* 17 *Pa.* 211. This is necessarily so, because if the sale had been held it would have been the Thompsons' property that was sold. It is true that at the argument the Thompsons' counsel conceded that the parties might have intended that the Conkeys retain some interest in the surplus proceeds. All we can say to this is that the contract does not say so.

It is true that the language of the contract, quoted above, appears to contemplate that settlement would be made through the Sheriff's office—presumably upon the assumption that the Thompsons would not require the Sheriff to return to them the amount due to the Conkeys. But the mechanics of payment of the balance of the purchase price are not important. The point is that the Conkeys, having passed the title, had no further interest in the property or in any proceeds of sale in excess of the purchase price.

The Conkeys say that the language of paragraph 1(b) of the agreement creates by implication a right in the Conkeys to any proceeds of sale in excess of $1,500.60. That paragraph provides:

"In the event that the purchasers shall not be the successful bidders for the said property at the said sale referred to in Sub-Paragraph (a) so that they do not secure the title thereto at said sale, with confirmation thereof as aforesaid, by reason of redemption thereof, or otherwise, then there shall be no further liability upon the purchasers as to any portion of the hereinbefore recited purchase price, and the sum of Two Hundred Dollars ($200.00) paid over by the purchasers to the sellers at the time of the execution of this agreement shall be returned to the purchasers upon their demand on the sellers, who cove-

nant and agree that they will stand ready to make such payment."

This paragraph has nothing to do directly with the disposition of the proceeds of sale. It provides an option to the purchasers not to go through with the contract. If, for example, unknown claims exceeding $1,500 should be established, the Thompsons might deem it to their interest to refuse to bid higher than $1,500.60. It is true that in such a case the Thompsons would be bound to reconvey the property and relinquish all claims to the proceeds; but this result would flow from their own voluntary act—not from any outright reservation of the Conkeys to any interest in the property.

The construction of the contract contended for by the Conkeys would convert it from an executed sale to an executory one—into a contract that would (1) require a public sale; (2) require the Thompsons to bid a minimum amount; and (3) compel the Thompsons to take the chance of having to pay more than the minimum amount required to be bid. This was not their bargain. The suggested construction makes the contract self-contradictory on its face—because an implied reservation of the right to the proceeds of sale is wholly inconsistent with a deed conveying the property for a fixed price.

We are of opinion that the provisions of the contract respecting the contemplated sale were for the benefit of the Thompsons, and that they did not breach the agreement in paying off the lien and standing on their quit-claim deed.

The judgment of the Court of Chancery is affirmed.